UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LUC QUY TRAN,

        Petitioner,

    v.

Case No. 2:26-cv-1322-KCD-NPM

WARDEN, EVERGLADES SOFT
SIDE FACILITY,  U.S. ATTORNEY
GENERAL,

        Respondents.

_____/

## **ORDER**

Petitioner Luc Quy Tran is back before this Court. Not long ago, the Court denied his first habeas petition without prejudice should his detention exceed six months. *See Tran v. Warden, Fla. Soft Side S. Det. Ctr.*, No. 2:25-cv-1224-KCD-NPM, 2026 WL 672969 (M.D. Fla. Mar. 10, 2026).[1] Because Tran's second habeas petition (Doc. 1) raises many of the same arguments as before, and his detention has not yet exceeded the six month mark, the petition is again **DENIED WITHOUT PREJUDICE**.[2]

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

[2] Christopher Ingram submitted a reply brief as Tran's "next friend." (Doc. 11.) As a non-lawyer, Ingram cannot represent Tran here, so the Court does not consider the reply. *See Weber v. Garza*, 570 F.2d 511, 514 (5th Cir. 1978); *Marcia Turner v. Neptune Towing & Recovery, Inc.*, No. 8:09-CV-I071-T-27AEP, 2011 WL 2981786, at *2 (M.D. Fla. July 22, 2011) ("Under Rule 17(c), a representative does not have the right to appear on behalf of a minor or an incompetent person unless that representative is represented by counsel."); *Bey on behalf of Baxter v. Fla.*, No. 4:24CV517/MW/ZCB, 2025 WL 351425, at *1 n.2 (N.D. Fla.

## I. Background

Tran is a Vietnamese national who arrived in the United States as a child. He was later convicted of murder, and an immigration judge ordered his removal. *See Tran v. State*, 667 So. 2d 812 (Fla. Dist. Ct. App. 1995). Because the Government could not effectuate his return to Vietnam due to repatriation issues, U.S. Immigration and Customs Enforcement ("ICE") released him on an order of supervision.

For over twenty years, Tran lived in the community and apparently complied with his conditions of release. But then, on December 9, 2025, ICE abruptly revoked his supervision and detained him. (Doc. 10-1 at 10.) ICE cited changed circumstances and a significant likelihood of removal in the foreseeable future, pointing specifically to a new plan to remove him to Mexico. (*See* Doc. 10-1.) Tran was provided an informal interview on the day of his arrest and a notice that ICE intends to remove him to Mexico. (*Id.* at 4, 7.) On April 10, 2026, ICE submitted a request for a travel document to the Consular Section of Vietnam in Washington, D.C. (Doc. 10-1 at 8.)

## II. Discussion

Tran argues that his continued detention violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1

Jan. 6, 2025); *Williams v. Billy*, No. 18-23529-CV, 2019 WL 2516590, at *2 (S.D. Fla. June 3, 2019).

at 17.) He also brings claims under the Administrative Procedures Act, the *Accardi* Doctrine, and that removal to a third country violates his due process rights. (*Id.* at 20-32.) The Court considers the *Zadvydas* claim. As for the others, the Court already denied Tran's arguments in its first order. *See Tran*, 2026 WL 672969, at *5-10. Because the Court already ruled against Tran, he is precluded from bringing another petition based upon the same claims. *See* 28 U.S.C. § 2244(a) ("No circuit or district judge shall be required to entertain an application for a writ of habeas corpus to inquire into the detention of a person pursuant to a judgment of a court of the United States if it appears that the legality of such detention has been determined by a judge or court of the United States on a prior application for a writ of habeas corpus . . . ."); *Watson v. Warden, FCC Coleman-USP I*, No. 5:12-CV-491 0C-27PRL, 2015 WL 78775, at *6 (M.D. Fla. Jan. 6, 2015) ("Successive § 2241 petitions by federal prisoners are subject to threshold dismissal in the district courts.").

For the *Zadvydas* claim, the statutory framework for removal works like this: when a noncitizen's removal order becomes final, like here, the government has 90 days to effectuate removal. 8 U.S.C. § 1231(a)(1)(A). During that period, detention is mandatory. *Id.* § 1231(a)(2)(A). If the 90 days pass and the noncitizen is still here, the statute gives the government a

3

choice: release the individual on supervision or keep them detained. *Id.* § 1231(a)(6).

But as the Supreme Court explained in *Zadvydas*, the authority to detain does not stretch into infinity. To avoid serious constitutional problems, the Court read an implicit limitation into the statute: the government may detain a noncitizen only for a period "reasonably necessary" to secure his removal. 533 U.S. at 659. And to make that rule workable, the Court established a presumption. For the first six months, detention is presumptively reasonable. *Id.* at 701. After that period has passed and the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the burden then shifts to the government to provide evidence sufficient to rebut that showing. *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002). Thus, "in order to state a claim under *Zadvydas*, the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.*

Applied here, Tran cannot satisfy the initial temporal requirement. ICE took him into custody on December 9, 2025. (Doc. 10-1 at 10.) Because he has been detained short of six months, he remains within the window in which his detention is presumptively reasonable. *See, e.g., Grigorian v. Bondi*, Case

4

No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Tran claims that his removal is not likely in the foreseeable future. (Doc. 1 at 3.) But this argument puts the cart before the horse. Until the six-month *Zadvydas* period concludes, detention is presumptively reasonable, and any due process claim is not ripe. *See, e.g., Grigorian v. Bondi*, Case No. 25-CV-22914-RAR, 2025 WL 1895479, at *8 (S.D. Fla. July 8, 2025); *Lopez v. Dir. of Enf't and Removal Operations*, Case No. 3:25-cv-1313-JEP-SJH, 2026 WL 261938, at *12 (M.D. Fla. Jan. 26, 2026); *Guerra-Castro v. Parra*, Case No. 25-cv-22487-GAYLES, 2025 WL 1984300 at *4 (S.D. Fla. July 17, 2025) (finding habeas petition "premature" because "Petitioner has not been detained for more than six months").

Tran attempts another workaround. He points to earlier periods of detention, seemingly arguing that the Court should aggregate his past and present stints in ICE custody. (Doc. 1 at 1-2, 4.) By combining these distinct periods of confinement, Tran contends that his total time in civil immigration detention exceeds the six-month threshold, which triggers *Zadvydas* review.

5

District courts are split on whether prior time in ICE custody should be aggregated to satisfy the six-month *Zadvydas* clock. Some have firmly rejected this cumulative approach. They reason that if "detentions [are counted] in the aggregate, any subsequent period of detention, even one day, would raise constitutional concerns." *Barrios v. Ripa*, No. 1:25-CV-22644, 2025 WL 2280485, at *8 (S.D. Fla. Aug. 8, 2025). Because the executive branch is tasked with great deference in effectuating removals, these courts warn that constantly adjudicating the constitutionality of every brief re-detention would improperly obstruct that statutory discretion. *Meskini v. Att'y Gen. of U.S.*, No. 4:14-CV-42 (CDL), 2018 WL 1321576, at *3 (M.D. Ga. Mar. 14, 2018). Under this view, *Zadvydas* does not function as a "Get Out of Jail Free Card that may be redeemed at any time just because an alien was detained too long in the past." *Id.*; *see also Flores-Reyes v. Assistant Field Off. Dir.*, No. 26-CV-20226, 2026 WL 406708, at *2 (S.D. Fla. Feb. 13, 2026).

Conversely, other courts have treated the *Zadvydas* period as cumulative. *Chen v. Holder*, No. CV 6:14-2530, 2015 WL 13236635, at *2 (W.D. La. Nov. 20, 2015). This approach is driven by the constitutional imperative to prevent the government from indefinitely detaining noncitizens through a loophole of release and re-detention. *Krechmar v. Parra*, No. 2:25-CV-01095-SPC-DNF, 2025 WL 3620802, at *3 (M.D. Fla. Dec. 15, 2025). To consider only the current, isolated period of confinement—ignoring all prior

6

custody—would allow the government to bypass *Zadvydas* through successive detentions. For these courts, aggregation is the only way to safeguard against the precise danger of indefinite detention that the Supreme Court sought to prevent. *See Rodriguez Romero v. Ladwig*, No. CV 25-1106-JWD-EWD, 2026 WL 321437, at *12 (M.D. La. Feb. 6, 2026).

This Court declines to endorse a blanket rule that all prior periods of confinement automatically aggregate to satisfy the *Zadvydas* six-month clock. Such a categorical approach is practically unworkable and effectively penalizes the government for its past lawful actions. If every prior day spent in immigration custody simply rolled over into the present calculus, the government's statutory authority to briefly re-detain a noncitizen to finalize a removal would be severely restricted, if not eliminated entirely. The six-month period established in *Zadvydas* was designed to provide the government a functional window to negotiate with foreign nations, secure travel documents, and coordinate the complex logistics of deportation. A strict aggregation rule ignores the reality that diplomatic circumstances evolve. If a foreign government that previously refused repatriation suddenly agrees to issue travel documents, the United States needs a practical opportunity to effectuate that newly viable removal. Mandating an automatic rollover of all past detention would force the immediate release of a noncitizen even when

7

their current custody is driven by an imminent, foreseeable deportation, ultimately frustrating the core purpose of the removal statute.

Instead, the better approach is to afford the government a new six-month presumptively reasonable period for each discrete detention, unless there are facts suggesting the government is acting with an improper motive. If the record reveals a calculated pattern of catch-and-release designed merely to reset the *Zadvydas* clock or evade judicial review, aggregation may be entirely appropriate. But absent evidence of such bad faith or a deliberate strategy of looping confinement, courts should presume that a subsequent detention is a genuine, independent effort to effectuate removal. This standard strikes the appropriate balance. It alleviates constitutional concerns regarding indefinite, cyclical detention by providing a safeguard against abuse, while simultaneously protecting the government's legitimate, statutory interest in finalizing deportations when logistical or diplomatic circumstances finally permit.

This approach finds support in both *Zadvydas*'s reasoning and the historical foundations of the vehicle Tran employs (habeas corpus). In *Zadvydas*, the Supreme Court eschewed a rigid, mechanical formula, focusing instead on whether the length of detention remains "reasonably necessary to secure removal." 533 U.S. at 699. The Court explicitly instructed lower courts to measure reasonableness in light of the specific circumstances of the case

8

and the actual likelihood of a future deportation. *Id.* ("It should measure reasonableness primarily in terms of the statute's basic purpose, namely, assuring the alien's presence at the moment of removal."). That directive undermines the logic of a blind, automatic aggregation of prior custody days here. *See also Meskini*, 2018 WL 1321576, at *3.

A flexible standard also aligns with the fundamental principle that habeas corpus is "at its core, an equitable remedy." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). Because habeas relief is governed by equitable principles, courts are empowered to look beyond a mere mathematical tally to examine the totality of the circumstances. *Id.*; *see also Duckworth v. Eagan*, 492 U.S. 195, 213 (1989) (O'Connor, J., concurring) ("[T]he Court has long recognized that habeas corpus [is] . . . governed by equitable principles[.]"). By inquiring into whether the government has engaged in a deliberate cycle of release and re-detention, the court exercises its equitable discretion to prevent gamesmanship, all while preserving the executive branch's necessary flexibility to enforce the immigration laws.

Applying this standard here, Tran's argument for aggregation falls short. While he points to prior periods of ICE custody, the record is devoid of evidence that immigration officials manipulated his release and rearrest to bypass the six-month presumption or avoid judicial oversight. Without proof

of such tactical maneuvering, this Court treats his present custody as an independent, good-faith endeavor to secure his deportation.

As the Supreme Court has long recognized, "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore*, 538 U.S. at 523. So the executive branch gets a presumptively reasonable six-month runway to do its job, negotiate with foreign governments, and execute a final removal order. *Zadvydas*, 533 U.S. at 701. Because Tran's remains inside that window, his current custody does not cross the line into the kind of indefinite, arbitrary lockup the Fifth Amendment forbids. Until that clock actually runs out, the Government retains the constitutional authority to hold him.

### III. Conclusion

Tran's Fifth Amendment challenge to the length of his detention is premature, so the habeas petition must be **DENIED**. However, this denial is without prejudice to him refiling a new petition should his current detention exceed the six-month mark, and he can demonstrate there is no significant likelihood of removal in the reasonably foreseeable future. The Clerk is **DIRECTED** to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on May 21, 2026.

Kyle C. Dudek
United States District Judge